UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **JEFFREY LEWIS** : | |
|       Plaintiff : | |
| : | |
| v. : | C.A. NO.: |
| : | |
| **HERSHEY CREAMERY COMPANY, alias,** : | Jury Trial Requested |
|       Defendant : | |

## COMPLAINT

### I.       Introduction

1.      This is an action brought by Plaintiff Jeffrey Lewis ("Plaintiff") against his former employer, Hershey Creamery Company, alias, seeking compensatory, punitive, and liquidated damages, as well as attorneys' fees, costs, and other equitable relief, arising out of violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, the Massachusetts Wage Act ("Wage Act"), M.G.L. c 149 § 148, *et seq.*, and the common law of Contracts.

### II.       Parties

2.      Plaintiff Jeffrey Lewis is, and was at all relevant times, a resident of the Town of Barrington, County of Bristol, and State of Rhode Island. At all times relevant to this action, Plaintiff was an employee within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA and M.G.L. c 149 § 148 of the Wage Act, employed by Defendant.

3.      At all relevant times, Defendant Hershey Creamery Company, alias, ("Defendant") was a corporation duly organized and incorporated under the laws of the State of Delaware with a principal place of business located at 301 South Cameron Street, Harrisburg, Pennsylvania 17101, and a place of business located at 107 Pond Street, Seekonk, Massachusetts  02771.

*FLSA Liability Allegations*

4. At all relevant times, Defendant was Plaintiff's employer within the meaning of 29 U.S.C. § 203(d) and M.G.L. c 149 § 148.

5. At all times hereinafter mentioned, Defendant, on a regular, consistent and recurrent basis, as part of the Defendant's regular course of business of providing services and distributing products in interstate commerce, employed Plaintiff in the activities of said enterprise engaged in commerce or in the production of goods for commerce, including handling, selling or otherwise working on goods or materials that have been moved in or produced in commerce.

6. Defendant's enterprise, at all times hereinafter mentioned, has had an annual gross volume of sales made or business done in the amount of not less than $500,000.00.

7. Therefore, at all relevant times, the Plaintiff was employed in an enterprise engaged in commerce or in the production of goods for commerce within the meaning of, *inter alia*, 29 U.S.C. § 203(s).

8. At all relevant times, Plaintiff was "engaged in commerce or in the production of goods for commerce" within the meaning of, *inter alia*, 29 U.S.C. §§ 203(b), (i)-(j), 206(a) and 207(a) while employed by Defendant as a Salesman/Area Manager.

9. At all relevant times, Defendant was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of, *inter alia*, 29 U.S.C. §§ 203(s).

### III. Jurisdiction

10. The United States District Court for the District of Massachusetts has federal subject matter jurisdiction over this case under the provisions of 28 U.S.C. § 1331 because it asserts claims arising under Federal law; specifically, the FLSA, 29 U.S.C. § 201, *et seq*. Supplemental

jurisdiction over the state law claims set forth herein is predicated on 28 U.S.C. § 1367 as they arise out of the same case and controversy.

### IV.     Venue

11. Venue is proper in this Court insofar as the Defendant is doing business in Massachusetts and, therefore, are deemed to reside in the District of Massachusetts in compliance with the requirements set forth in 28 U.S.C. § 1391. Moreover, a substantial part of the acts and/or omissions giving rise to the claims occurred in the District of Massachusetts.

### V.     Material Facts

#### A.     Background

12. Defendant manufactures ice cream, including hand-dipped, pre-packaged, and novelty items that are sold to consumers, retailers, schools, institutions, and other customers, throughout the Eastern United States.

13. On or about August 1987, Plaintiff was hired by Defendant as a Route Driver.

14. In 1994, Plaintiff was promoted to Salesman working out of Defendant's location at 107 Pond Street, Seekonk, MA 02771.

15. Plaintiff worked for Defendant as a Salesman, also referred to as Area Manager, until his termination on May 19, 2020.

16. Plaintiff, as a Salesman/Area Manager, was responsible for signing on new business and managing 495 existing accounts while also expected to train new managers and truck drivers, pull ice cream and load trucks, run routes, repair and deliver freezers, and complete any other assigned task necessary to support his sales.

17. At all relevant times, Plaintiff's compensation consisted of a bi-weekly salary of $1,587.00, premium pay commissions varying between $700.00 and $1,300.00 monthly, quarterly

guaranteed bonuses of $1,000.00, and an employer funded car fund that could be used to purchase a vehicle or, if not used, paid out to Plaintiff upon his separation from employment.

18. At all relevant times and throughout Plaintiff's employment, Plaintiff was a loyal, dedicated, experienced, and productive employee of Defendant in good standing and with good reviews.

19. At all relevant times and throughout Plaintiff's employment, it was clear to Defendant that Plaintiff was a loyal, dedicated, experienced, and productive employee of in good standing and with good reviews.

20. In fact, Plaintiff consistently signed on new business and grew his sales territory by $1.5 to $2 million dollars annually.

21. Prior to his termination, Plaintiff was ranked fourth in sales nationally.

22. At the time of Plaintiff's termination discussed below, Plaintiff had just signed on two (2) major accounts consisting of a franchise chain of sixty (60) 7-Eleven stores and ten (10) affiliated hospitals in the northeast area with combined annual sales estimated to be approximately $250,000.00.

23. The aforementioned two accounts alone would have increased Plaintiff's monthly commissions by at least $700.00 for the next three (3) years.

### B.  Bad-Faith/Lack of Good Cause Termination

24. On May 19, 2020, Plaintiff was abruptly terminated from his position despite his successful sales track record and thirty-three (33) years of service to Defendant.

25. Specifically, Plaintiff was called into a meeting at around 8:30 a.m. with Defendant's Auditor, George Marchant, and Northern Regional Director, Thomas Holder, who participated via telephone.

26. During that meeting, Plaintiff was suddenly and abruptly accused of "violating company policy to [his] benefit" by allegedly "buffering" his premium pay commissions when it relates to re-signed accounts. It was alleged that Plaintiff had duplicated twenty-five (25) accounts

27. Plaintiff immediately denied any intentional wrongdoing and attempted to seek and provide clarification as to the baseless claims brought against him, but was simply told that he had duplicated accounts and vaguely told that he submitted new business agreements for accounts that should have been marked as re-signed business.

28. Plaintiff strongly disagreed with and denied the allegations brought against him because every time he signs on an account, he is required to present a completed new business agreement to Defendant's Office Manager and Bookkeeper, Joe Reagan, who is required to review and submit the new business agreement and enter information into Defendant's database, including whether the account requires a "Re-sign Account Form."

29. Throughout Plaintiff's career with Defendant, Plaintiff diligently completed timely new business agreements, submitted the same for review and approval, and was not informed that he was duplicating accounts and/or not properly submitting the Re-sign Account Form.

30. Defendant could have easily brought any perceived discrepancy to Plaintiff's attention so that the matter could easily have been rectified instead of terminating Plaintiff's employment without notice or warning.

31. Further, while Plaintiff was informed that he needed to fill out "Re-sign Account Forms" for appropriate accounts, he was never once informed that he was required to fill out said forms for accounts where the business was taken over by new owners, and therefore was a new business, or the business had closed down and subsequently reopened, both of which seemed to be the case regarding the accounts at issue.

32. During that May 19, 2020 meeting, Plaintiff was never shown a list of accounts/dates that he allegedly duplicated nor given clarification as to which company policy he allegedly violated and how said policy was allegedly violated.

33. Instead, Plaintiff was terminated effective immediately, without allowing him any opportunity to address Defendant's allegations and without any prior warning or opportunity to improve.

34. Towards the end of the meeting, Mr. Holder informed Plaintiff that Defendant would be withholding all of his wages until it completed an investigation in two (2) to three (3) weeks.

35. Defendant did not follow its own progressive discipline policy in terminating Plaintiff who had thirty-three (33) years of outstanding service to Defendant at the time and who was in good standing.

36. Further, throughout Plaintiff's employment with Defendant, all salespeople submitted new business agreement forms the same way that Plaintiff did, for both reopened businesses and new owner businesses, and were never informed that they should do otherwise or that there was any issue with doing it the way they did.

37. On information and belief, prior to Plaintiff's termination no other salesperson was ever disciplined or terminated for the reason Defendant terminated Plaintiff's employment.

38. Even if Plaintiff inadvertently violated one of Defendant's policies, that policy was not enforced or not uniformly enforced.

39. Subsequently, Plaintiff received an undated termination letter from Defendant where it was now alleged that the number of improper accounts was eleven (11) instead of twenty-five (25) and Plaintiff was also, for the first time, wrongfully accused of allegedly submitting "what

appeared to be fraudulent customer documentation" – something that was never brought up as the basis for his termination during the May 19, 2020 meeting.

### C. Unpaid Wages and Breach of Contract

40. As part of my Plaintiff's compensation package, he was entitled to a Defendant-provided car fund, also known as a Vehicle Accrual Fund, to be used towards the purchase of a vehicle or paid out to Plaintiff upon retirement or separation from employment.

41. At the time of his separation, Plaintiff's car fund totaled approximately $17,010.00.

42. Under the Wage Act, said car fund is considered to be "wages" due and payable to Plaintiff upon separation from employment, which Defendant failed and refused to do.

43. At the time of his separation, Plaintiff was entitled to vested commission or "premium pay" payments totaling at least $1,743.00 and a guaranteed T.G.I.P. bonus of $1,000.00, which Defendant has failed and refused to pay.

44. At the time of his separation Plaintiff had successfully signed on two new major accounts as a result of his sales efforts — 1) a franchise chain of sixty (60) 7-Eleven stores; and, 2) ten (10) affiliated hospitals in the northeast area — collectively estimated to result in at least $250,000.00 in annual sales revenue.

45. Plaintiff would have been entitled to at least $54,900.00 in commission payments over the course of three (3) years on those accounts but for his discharge, whether opportunistic, in bad-faith, or otherwise.

46. The commissions owed to Plaintiff on the aforementioned accounts were definitely determined and due and payable at the time of Plaintiff's separation, and, therefore, are considered wages under the Wage Act and Defendant has failed and refused to pay the same.

47. Massachusetts has recognized that even at-will employees may bring suit for breach of contract/covenant of good faith and fair dealing relative to compensation.

48. The *Fortune* case and its progeny provide that an employer is accountable to a terminated employee for unpaid compensation if the employee was terminated in bad faith and the compensation is clearly connected to work already performed. *See Fortune v. Nat'l Cash Register Co.*, 364 N.E.2d 1251 (Mass. 1977).

49. Even absent bad faith, the obligation of good faith and fair dealing imposed on an employer requires that the employer be liable for the loss of compensation that is so clearly related to an employee's past service when the employee is discharged without good cause. *See Gram v. Liberty Mut. Ins. Co.*, 429 N.E.2d 21 (Mass. 1981).

50. Defendant's failure to pay the aforementioned commissions, including on the two (2) new accounts consisting of 1) a franchise chain of sixty (60) 7-Eleven stores; and, 2) ten (10) affiliated hospitals in the northeast area, also constitutes a breach of contract, both because Plaintiff was terminated in bad faith and because even absent bad faith Defendant's obligation of good faith and fair dealing with Plaintiff require the payment of the aforesaid commissions as the contribution to Defendant's future income was not tenuous and Defendant benefited from its discharge of the Plaintiff without cause and for saving costs.

### VI. Claims for Relief

51. Plaintiffs incorporate the allegations contained in ¶¶1 through 50 above in the counts set forth below.

### Count One
### *Violation of FLSA, 29 U.S.C. § 201, et seq.*

52. Defendant, by its individual and/or concerted acts and/or omissions, including, but not limited to, those described herein, violated the FLSA, thereby causing Plaintiff to suffer damages as aforesaid, for which he is entitled to relief pursuant to 29 U.S.C. § 216(b).

### Count Two
### *Violation of the Massachusetts Wage Act, M.G.L. c 149 § 148, et seq.*

53. Defendant, by its individual and/or concerted acts and/or omissions, including, but not limited to, those described herein, violated the Wage Act, thereby causing Plaintiff to suffer damages as aforesaid, for which he is entitled to relief pursuant to M.G.L. c 149 § 148, et seq.

### Count Three
### *Breach of Contract*

54. Defendant, by its individual and/or concerted acts and/or omissions, including, but not limited to, those described herein, breached the contract and employment agreement between Plaintiff and Defendant, particularly as it relates to the contractual terms of Plaintiff's compensation and the legitimate expectations of the Plaintiff, in violation of the common law of Massachusetts, thereby causing Plaintiff to suffer damages as aforesaid

### Count Four
### *Breach of Covenant of Good faith and Fair Dealing*

55. Defendant. by its individual and/or concerted acts and/or omissions, including, but not limited to, those alleged herein, engaged in conduct intended to defeat the object of its employment agreement with Plaintiff, particularly as it relates to the contractual terms of Plaintiff's compensation and the legitimate expectations of the Plaintiff, thereby breaching the implied covenant of good faith and fair dealing under the common law of Massachusetts as expressed in *Fortune* and *Gram*, causing Plaintiff to sustain damages as aforesaid.

## VII. Prayers for Relief

**WHEREFORE**, Plaintiffs pray that this Honorable Court grant the following relief:

1. A declaratory judgment declaring the acts and/or omissions of the Defendant, including, but not limited to those complained of herein, violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, the Massachusetts Wage Act ("Wage Act"), M.G.L. c 149 § 148, *et seq.*, and Massachusetts common law of Contracts as expressed in *Fortune* and *Gram*.

2. An injunction or other equitable relief, including, but not limited to, back and front unpaid commissions.

3. An award of compensatory damages.

4. An award of liquidated damages pursuant to 29 U.S.C. § 216(b).

5. An award of liquidated damages in an amount equal to three times the amount of wages and/or benefits owed pursuant to M.G.L. c 149 § 150.

6. An award of reasonable attorneys' fees and costs of litigation pursuant to 29 U.S.C. § 216(b).

7. An award of reasonable attorneys' fees and costs pursuant to owed pursuant to M.G.L. c 149 § 150.

8. An award of punitive damages.

9. An award of statutory interest.

10. An award of other appropriate equitable relief pursuant to 29 U.S.C. § 216(b).

11. An award of other appropriate equitable relief pursuant to M.G.L. c 149 § 150.

12. An award of such other and further relief as this Honorable Court deems just and proper.

## VIII. Demand for Jury Trial

The Plaintiff hereby demands a trial by jury on all counts so triable.

## IX. Designation of Trial Counsel

The Plaintiff hereby designates Danilo A. Borgas, Esquire as trial counsel.

|  |  |
|---|---|
|  | Plaintiff,<br>By his attorneys,<br>**SINAPI LAW ASSOCIATES, LTD.** |
| **Dated: August 5, 2020** | **/s/ Danilo A. Borgas**<br>**Danilo A. Borgas, Esq.  (#690709)**<br>2374 Post Road Suite 201<br>Warwick, RI  02886<br>Phone: (401) 739-9690<br>FAX: (401) 7394-9040<br>Email: dab@sinapilaw.com |